Matter of Investcloud Inc. v Siegal (2024 NY Slip Op 50469(U))

[*1]

Matter of Investcloud Inc. v Siegal

2024 NY Slip Op 50469(U)

Decided on April 24, 2024

Supreme Court, Monroe County

Doyle, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 24, 2024
Supreme Court, Monroe County

In the Matter of Application of Investcloud, Inc., Petitioner,

against
Evan Siegal, PRICEWATERHOUSECOOPERS ADVISORY SERVICES LLC, and PRICEWATERHOUSECOOPERS LLP, Respondents. For a Judgment Pursuant to the Federal Arbitration Act.

Index No. E2024004906

John T. Murray, Esq., Tristan D. Hujer, Esq., Christopher Barraza, Esq., and David L. Cook, Esq., PHILLIPS LYTLE LLP, for the Petitioner
Brendan R. McGuire, Esq., and Brad E. Konstandt, Esq., WILMER CUTLER PICKERING HALE AND DOOR LLP, for Respondents

Daniel J. Doyle, J.

Petitioner seeks judicial intervention in a pending arbitration proceeding, conducted pursuant to the Federal Arbitration Act, to compel third party discovery by respondents. For the reasons that follow, the Petition is DENIED, and the stay of the arbitral hearing is vacated.
Findings of Fact
Petitioner Investcloud, Inc. (hereinafter "petitioner") entered into a Master Services Agreement (hereinafter "agreement") with Manning & Napier Advisors, LLC (hereinafter "Manning") to develop software for Manning. Manning claimed a breach of the agreement, and pursuant to the agreement's mandatory arbitration provision, the matter was referred to arbitration. That provision stated that "[a]ll [*2]disputes hereunder shall be settled by arbitration under the auspices of JAMS in the state of New York".[FN1]

Relevant herein, petitioner was selected as the vendor to provide the services to Manning pursuant to a "request for information" (hereinafter "RFI") process overseen by the respondents herein. Respondent Evan Siegal (hereinafter "Siegal") was the partner at Respondents Pricewaterhousecoopers Advisory Services LLC and Pricewaterhousecoopers LLP (hereinafter "PWC"). Petitioner alleges that Manning had little involvement in the selection of petitioner under the RFI process as PWC oversaw the RFI process. Siegal was identified by Manning as a relevant witness at the arbitral hearing.
The arbitrator issued a scheduling order in which the arbitrator noted that the arbitration would be "governed by the JAMS Comprehensive Arbitration Rules and Procedures ("JAMS Rules")". The parties agree that the arbitrator determined that the Federal Arbitration Act (hereinafter "FAA") would apply, and petitioner does not dispute that determination. Additionally, petitioner and Manning agreed to a confidentiality agreement wherein the parties agreed that should any third-party discovery be provided, it would be considered confidential. Thereafter, the parties engaged in discovery.
Petitioner sought discovery from Siegal and PWC through Manning but petitioner alleges that Manning has not been forthcoming will all relevant discovery as to PWC's work on the RFI process. Petitioner notes that Manning has produced 4,266 documents (out of a combined discovery production by the parties of 19,385 documents) and only 48 non-substantive emails from PWC were provided (and no emails authored by Siegal). Petitioner avers that it has not been provided PWC discovery outlining how the RFI process was developed and scored, and how Siegal and PWC ultimately determined to select petitioner. Petitioner also averred that Manning refused to provide relevant information, as it "cannot speak for [PWC]".
Counsel for petitioner served a deposition subpoena on Siegal and a document subpoena on PWC to obtain evidence relevant to the arbitral hearing. Siegal and PWC refuse to comply with the subpoenas. Petitioner initiated this special proceeding seeking to compel respondents' compliance with the subpoenas.[FN2]
Petitioner did not seek to obtain a ruling from the arbiter as to whether the sought non-party discovery should be ordered prior to initiating this [*3]proceeding.
On March 26, 2024 this Court entered an Order temporarily staying the arbitration proceeding until resolution of the issues herein.
Conclusions of Law
Whether the FAA allows non-party pre- hearing discovery has resulted in a "circuit split" among the U.S. Court of Appeals. (See e.g., In re Sec. Life Ins. Co. of Am., 228 F3d 865 [8th Cir. 2000]- FAA Section 7 grants arbitration panel inherent authority to conduct pre-hearing discovery of "integrally related" non-party; Life Receivables Tr. v. Syndicate 102 at Lloyd's of London, 549 F3d 210, 218 [2nd Cir. 2008]- "arbitrators possess a variety of tools to compel discovery from non-parties. However, those relying on section 7 of the FAA must do so according to its plain text, which requires that documents be produced by a testifying witness" at the hearing; compare COMSAT Corp. v. Nat'l Sci. Found., 190 F3d 269, 278 [4th Cir. 1999]: "a federal court may not compel a third party to comply with an arbitrator's subpoena for prehearing discovery, absent a showing of special need or hardship".)
In ImClone Sys. Inc. v. Waksal (22 AD3d 387 [2nd Dept. 2005]) the Second Department determined that as there was no controlling US Supreme Court authority, or unanimity among the lower federal courts, it was free to exercise its own judgment as to whether the FAA allows pre-hearing, non-party discovery. The Court adopted the 4th Circuit's view and held:
We subscribe to the view that depositions of nonparties may be directed in FAA arbitration where there is a showing of "special need or hardship," such as where the information sought is otherwise unavailable (see COMSAT Corp. v National Science Found., 190 F3d 269, 276-277 [1999]; Application of Deiulemar Compagnia Di Navigazione S.p.A. v M/V Allegra, 198 F3d 473, 479-480 [1999], cert denied sub nom. Pacific Eternity, S.A. v Deiulemar Compagnia Di Navigazione, S.p.A., 529 US 1109 [2000]). This view properly takes into consideration the realities and complexities of modern arbitration.
(Id. at 388.)
This Court is bound by ImClone and its holding. Under New York's interpretation of the FAA, an arbitrator is authorized to order non-party discovery (through subpoena) upon a showing of "special need or hardship".[FN3]

However, the determination on whether process should be issued to compel non-party discovery (a determination as to whether petitioner established a "special need or hardship"), and the issuance of such process, must be made by the arbiter.
As respondents correctly note, the Court of Appeals has cautioned trial courts from becoming "unnecessarily entangled in arbitrations or from serving " 'as a vehicle to protract litigation' " (Nationwide Gen. Ins. Co., 37 NY2d at 95, quoting Weinrott, 32 NY2d at 199; see Smith Barney Shearson, 91 NY2d at 49-50; Goldfinger, 68 NY2d at 231; Matter of Sprinzen [Nomberg], 46 NY2d 623, 629 [1979])." (Am. Int'l Specialty Lines Ins. Co. v. Allied Cap. Corp., 35 NY3d 64, 70 [2020].) Furthermore, the parties herein, having consented to private arbitration of their disagreements, necessarily waived "certain procedural rights attendant to formal litigation in return for a more efficient and cost-effective resolution of their disputes. See Burton v. Bush, 614 F.2d 389, 390—91 (4th Cir. 1980)". (COMSAT Corp. v. Nat'l Sci. Found., supra at 276.)
The parties herein agreed that the JAMS rules would apply to their arbitration proceeding. The relevant JAMS rules (although not as clear as one would hope) do contemplate the use of pre-hearing, non-party discovery. (See JAMS Rule 17[e].) The JAMS Recommended Arbitration Discovery Protocols for Domestic, Commercial Cases set forth relevant factors arbiters should consider in determining the scope of relevant discovery, including its power to subpoena third-party information, and whether the "denial of the requested discovery would, in the arbitrator's judgment (after appropriate scrutinizing of the issues), deprive [*4]the requesting party of what is reasonably necessary to allow that party a fair opportunity to prepare and present its case". As petitioner herein agreed to arbitrate any disputes with Manning, and the arbitration rules are not arbitrary and satisfy the necessary due process to protect the rights of the parties and ensure a fair arbitration proceeding, this Court declines to intervene. (See gen. Goldfinger v. Lisker, 68 NY2d 225 [1986].)
Furthermore, as the parties agreed that the FAA applies to their arbitration, any authority to issue subpoenas is derived from Section 7. Its plain language limits the power to issue subpoenas to the arbitrator. ("Most significantly, the FAA permits the arbitration panel—but not the parties—to summon witnesses before the panel to testify and produce documents and to petition the district court to enforce the summons." Servotronics, Inc. v. Rolls-Royce PLC, 975 F3d 689, 695 [7th Cir. 2020]; Nat'l Broad. Co. v. Bear Stearns & Co., 165 F3d 184 [2nd Cir. 1999]; Burton v. Bush, 614 F2d 389, 390 [4th Cir. 1980]: "While an arbitration panel may subpoena documents or witnesses, Commercial Metals Co. v. International Union Marine Corp., (S.D.N.Y.1970) 318 F.Supp. 1334; the litigating parties have no comparable privilege.")
Finally, whether petitioner has established a "special need or hardship" to justify the issuance of a third-party subpoena for documents and pre-hearing discovery is best determined by the arbiter. The arbiter has overseen the extensive discovery in the proceeding and can fairly determine — employing the factors outlined by JAMS as agreed to by the parties- whether the discovery is required to ensure a fair arbitral hearing. This Court should not intrude into the arbitration proceeding to determine issues best left to the discretion of the arbiter, and ImClone and Roche do not mandate same.
Based upon the forgoing, and the submissions of the parties [FN4]
, it is hereby
ORDERED that the Petition is DENIED; and it is further
ORDERED that the stay of the arbitration proceedings is vacated.
Dated: April 24, 2024
Honorable Daniel J. Doyle, JSC

Footnotes

Footnote 1:The agreement also stated that it was governed by the laws of the State of New York.

Footnote 2:Petitioner also alleges that Manning and respondents are conspiring to prevent petitioner from obtaining the requested discovery. The Court rejects this argument.

Footnote 3:The Court rejects petitioner's argument that this Court is required to determine whether a "special need or hardship" exists to justify non-party discovery. ImClone did not hold that an intervening Court must make that determination. Instead, the Second Department affirmed the issuance of a New York commission pursuant to CPLR Rule 3108 on a different ground than that relied upon by the trial court. Important to the analysis is the fact that the arbiters had authorized the subpoenas of out-of-state non-party witnesses (ruling that such evidence was relevant to the proceeding). Similarly, in Matter of Roche Molecular Sys., Inc. (60 Misc 3d 222 [NY Sup. Ct. 2018]) the arbiters issued authorization to seek a commission from a New York court for non-party evidence. Nothing in ImClone or Roche supports an argument that a New York court- as opposed to the arbiters- must conduct an independent analysis of whether a party to an arbitration agreement has established a special need for third-party discovery and having so determined, compel the compliance of a subpoena issued by one of the parties to the arbitration. Determination of whether a subpoena should be issued to compel non-party disclosure is best left to the arbiter(s), and New York courts should avoid inserting themselves into arbitration proceedings to determine discovery issues. A contrary rule would require New York courts to inject themselves into the arbitration discovery process and thus impermissibly entangling themselves in the proceedings, especially where (as here) the parties did not address the issue of non-party discovery with the arbiter prior to initiating a special proceeding to compel non-party discovery.

Footnote 4:Petition and exhibits (NYSCEF Docket #s 1-41); Memorandum of Law (NSYCEF Docket # 43); Affirmation (NYSCEF Docket # 44); Affidavit (NYSCEF Docket # 45); Affirmation of Brad E. Konstandt with exhibits dated April 9, 2024; Respondents' Memorandum of Law in Opposition; Memorandum of Law in Reply; Affirmation in Reply with exhibits.